UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
|     EMELINE WILSON | ) | Case No. 05-13928-SSM |
| | ) | Chapter 11 |
|                Debtor | ) | |
| | ) | |
| EMELINE WILSON | ) | |
| | ) | |
|                Plaintiff | ) | |
| | ) | |
| vs. | ) | Adversary Proceeding No. 06-1063 |
| | ) | |
| DAVID MOIR, *et al.* | ) | |
| | ) | |
|                Defendants | ) | |

**MEMORANDUM OPINION**

When Emeline Wilson bought a parcel of commercial real estate in August 2004, she signed three deeds of trust to secure money that had been advanced for the purchase. One of those—in favor of David L. and Vanessa M. Moir—was recorded approximately an hour before the deed to the property. The other two were recorded after the deed. Having subsequently filed for chapter 11 protection, Ms. Wilson—invoking her "strong-arm" powers as a debtor in possession—now seeks summary judgment setting aside the Moir deed of trust because it was not in the chain of title and would not have bound a bona fide purchaser for value. Because applicable Fourth Circuit precedent would attribute Ms. Wilson's own knowledge to herself as debtor in possession, and because there is a factual

1

dispute as to whether she was aware of the Moir deed of trust, the court must deny the motion for summary judgment.

## Background

Emeline Wilson ("the debtor") filed a voluntary petition for reorganization under chapter 11 of the Bankruptcy Code in this court on September 29, 2005. No trustee has been appointed, and she remains in possession of her estate as debtor in possession. Among the assets listed on her schedules was a parcel of commercial real estate located at 6819 Old Georgetown Pike, McLean, Virginia, valued at $10,600,000.[1]

Ms. Wilson purchased the property in August 2004 from Charles Toone, Trustee of the Toone Land Trust, for $3,824,000. The bulk of the purchase price was financed by a loan from First Mariner Bank, which advanced $3,800,000 in cash for the purchase, secured by a deed of trust in the amount of $5,900,000 (which included future advances) against the property and two other parcels Ms. Wilson owned, and also by a pledge of $700,000 in certificates of deposit. Mr. Toone took back a $360,000 note secured by a deed of trust against the parcel. Finally—and relevant to the present dispute—David L. and Vanessa M. Moir provided $500,000 under an investment agreement that was secured by a deed of trust in the amount of $750,000 and partially guaranteed by Roger and Bret Amendola.[2] Under the agreement, the Moirs would receive their investment plus a 50% return—a total of

---

[1] The court recently approved a sale of the property for $4,560,000 free and clear of liens.

[2] The $500,000 investment is not directly reflected on the settlement statement (HUD-1 form); but it would appear that the funds were used to purchase one of the certificates of deposit that was pledged to First Mariner as additional collateral for the loan.

$750,000—at the end of 360 days.  The Amendolas guaranteed $200,000 of the principal, and in exchange for their guarantee were to receive 20% of the profit due to the Moirs.

The evidence is disputed as to whether First Mariner and Toone were aware of the Moir involvement. The Moirs say they were, and that all the parties fully understood that the Moirs were to have a "fully secured" position.  The current holder of the First Mariner note and Toone say that neither First Mariner nor Toone were aware of, or would have consented to, the Moir deed of trust.  The deed from Mr. Toone to Ms. Wilson, and the First Mariner and Toone deeds of trust, were dated August 4, 2004, which was the date originally set for the settlement on the purchase.  Settlement, however, was postponed, apparently because First Mariner required the debtor to put additional cash into the deal.

In any event, the Moir deed of trust was recorded on August 13, 2004, at 12:30 p.m. The deed from Mr. Toone to Ms. Wilson, and the deeds of trust from Ms. Wilson in favor of First Mariner and Mr. Toone, were each recorded later that same day at 1:41 p.m.  The First Mariner note and deed of trust were eventually sold to TS3 Grantor Trust, the current noteholder.  The Moirs have filed a proof of claim asserting a secured claim in the amount of $750,000.

The present action was commenced by the debtor on March 1, 2006, against the Moirs, the Amendolas, and the two trustees (Jeffrey J. Fairfield and Norman F. Hammer) named in the Moir deed of trust.[3]  The complaint is pleaded in four counts.  Count I seeks to

---

[3] TS3 Grantor Trust and Mr. Toone are named as nominal defendants, but no relief is sought against them.  The complaint was subsequently amended to add the trustees of their respective deeds of trust as nominal defendants.  The Moirs for their part, and TS3 and Toone for theirs, have filed cross-complaints against the other to establish the priority of
(continued...)

set aside the Moir deed of trust under Ms. Wilson's "strong-arm" powers as a debtor in possession. Count II seeks equitable subordination of the deed of trust. Count III seeks to limit the amount of the lien to the $500,000 actually advanced by the Moirs, further reduced by the $200,000 Amendola guarantee. And Count IV seeks disallowance of the Moir claim as a secured claim. The Moirs have filed an answer denying that the debtor is entitled to any of the relief requested and asserting that they have a valid first-lien deed of trust against the property. The debtor then filed the motion for summary judgment under Count I that is currently before the court.

<u>Discussion</u>

I.

Summary judgement is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Bankr. P. 7056; Fed. R. Civ. P. 56(c). Summary judgment is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed "to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1985). In ruling on motion for summary judgment, a court should believe the evidence of the nonmovant, and all justifiable inferences must be drawn in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202

---

[3](...continued)
their respective deed of trust.

(1986). However, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. *Id*. at 248, 106 S.Ct. at 2510.

II.

The motion for summary judgment concerns only Count I. Count I seeks avoidance of the Moir deed of trust under the "strong-arm" powers provided by § 544, Bankruptcy Code. That statute provides in pertinent part as follows:

> (a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor . . . that is voidable by—
> * * *
> (3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser at the time of the commencement of the case, whether or not such a purchaser exists.

§ 544(a)(3), Bankruptcy Code. *Owen-Ames-Kimball Co. v. Michigan Lithographing Co.* (*In re Michigan Lithographing Co.*), 997 F.2d 1158, 1159 (6th Cir. 1993) ("[A] trustee in bankruptcy is given the rights and powers of a bona fide purchaser of real property from the debtor if, at the time the bankruptcy is commenced, a hypothetical buyer could have obtained bona fide purchaser status."); *Mayer v. United States (In re Reasonover),* 236 B.R. 219, 227 (Bankr. E.D. Va. 1999) ("Simply stated, the bankruptcy trustee is in the same position, with respect to real estate, as if he were a bona fide purchaser who bought the property from the debtor on the filing date and simultaneously perfected the transfer by recording a deed."). In a chapter 11 case in which a trustee has not been appointed, the

debtor has the rights and powers (other than the right to compensation) of a trustee.  § 1107(a), Bankruptcy Code.

A.

As framed by Ms. Wilson, the only question before the court is whether a bona fide purchaser who had bought the property from her on September 29, 2005—the date of the chapter 11 filing—and had recorded his deed the same date, would have taken the property free from the Moir deed of trust.  The answer to the question, according to Ms. Wilson, is found in the plain text of Section 55-105, Code of Virginia (1950), which states:

> A purchaser shall not, under this chapter, be affected by the record of a deed or contract made by a person under whom his title is not derived; nor by the record of a deed or contract made by any person under whom the title of such purchaser is derived, if it was made by such person *before he acquired the legal title of record*.

(emphasis added).  Ms. Wilson's argument, in a nut-shell, is that as debtor-in-possession, she is treated under § 544(a)(3), Bankruptcy Code, as a bona fide purchaser of the property and therefore under § 55-105 is unaffected by the Moir deed of trust, since it was recorded before she acquired "legal title of record."

B.

To this, the Moirs make a number of responses, but only one requires discussion. The Moirs insist that because they have put forth evidence that the debtor, First Mariner, and Mr. Toone all knew of their deed of trust, summary judgment is not appropriate.  Whatever knowledge First Mariner and Mr. Toone had is not relevant to Count I, since Ms. Wilson is not asserting their rights in that count, but rather the rights of a bankruptcy trustee.  With respect to Ms. Wilson's own knowledge, the legal issue is more clouded.  Were this court

6

writing on a clean slate, the court would be inclined to rule that Ms. Wilson's personal knowledge of the Moir deed of trust is irrelevant, since the plain language of Section 544(a) gives a bankruptcy trustee the status of a bona fide purchaser "*without regard to any knowledge of the trustee*" (emphasis added).  As debtor in possession, Ms. Wilson has the same powers as a bankruptcy trustee; accordingly, any actual knowledge she might have had of the Moir deed of trust would not affect her ability, as debtor in possession, to set it aside. *E.g., McCannon v. Marston*, 679 F.2d 13, 16–17 (3rd Cir.1982).

The difficulty is that, notwithstanding the apparently clear language of Section 544(a), the Fourth Circuit—in a two-to-one panel decision over the dissent of then-Chief Judge Winter—has interpreted it to bar a debtor in possession from avoiding a deed of trust that would be binding on the debtor herself. *Pyne v. Hartman Paving, Inc. (In re Hartman Paving, Inc.),* 745 F.2d 307 (4th Cir. 1984).   In *Hartman*, a chapter 11 debtor in possession attempted to avoid a recorded but improperly notarized deed of trust.  Under state law, such a deed of trust would not, even though recorded, provide constructive notice and would not bind a purchaser *without* actual notice. *Id.* at 309–310.  It would, however, be good between the parties or those purchasing *with* actual notice. *Id.*  The Court held that because the debtor in that case "was a party to the transaction and . . . had actual knowledge" of the deed of trust, he was "not the type of subsequent purchaser that [state law] was designed to protect" and therefore could not avoid the deed of trust, notwithstanding his statutory powers under § 544(a). *Id.* at 310.  In Virginia, the mere fact that a deed of trust is recorded before the mortgagor acquires title to the property does not affect its validity as between the parties:

> When a deed purports to convey property, real or personal, describing it with reasonable certainty, which the grantor does not own at the time of the

> execution of the deed, but subsequently acquires, such deed shall, *as between the parties thereto*, have the same effect as if the title which the grantor subsequently acquires were vested in him at the time of the execution of such deed and thereby conveyed.

Va. Code Ann. § 55-52 (emphasis added). Accordingly, the holding in *Hartman*—assuming it remains good law—would deny Ms. Wilson the ability to avoid the Moir deed of trust if she had actual knowledge of it. Since there is no evidence that Ms. Wilson was unaware of the Moir deed of trust, summary judgment cannot be granted.

C.

That said, the court must acknowledge that *Hartman*—which the Fourth Circuit itself has not cited in the more than 20 years since it was decided—is contrary to the great weight of authority. *Every* other circuit that has addressed the issue has reached a contrary conclusion. *In re Probasco*, 839 F.2d 1352, 1354 (9th Cir. 1988); *In re Sandy Ridge Oil Co.*, 807 F.2d 1332, 1336 (7th Cir. 1986); *McCannon v. Marston*, 679 F.2d 13, 16–17 (3rd Cir. 1982). *Hartman*'s holding, moreover, seems inconsistent in spirit, if not precisely in letter, with later published cases by the Fourth Circuit. *See, e.g., Coleman v. Community Trust Bank (In re Coleman)*, 426 F.3d 719 (4th Cir 2005) (holding that a chapter 11 debtor in possession could exercise a trustee's strong-arm powers under § 544(a) to avoid a deed of trust granted to bank as a fraudulent transfer notwithstanding her personal involvement in the transfer). *Hartman* has also been criticized by two lower courts within this circuit, one of which was able to avoid its holding by distinguishing it on the facts, *In re MSC, Inc.*, 54 B.R. 650, 652 (Bankr. D. S.C. 1985), and the other by suggesting that it was simply no longer good law. *Glanz v. RJF Int'l Corp. (In re Glanz)*, 205 B.R. 750, 754–55 (Bankr. D. Md. 1997). In the present case, however, there does not appear to be any principled way of distinguishing the

8

facts from those in *Hartman*. As a lower court within the circuit, this court is clearly bound by a published opinion of the Court of Appeals, absent an intervening Supreme Court ruling or statutory changes.

### III.

Because *Hartman* in essence imputes the actual knowledge of the debtor to the debtor in possession, it is unnecessary for the court to decide the more difficult issue of whether, under Virginia law, a bona fide purchaser for value would have been bound by the Moir deed of trust. Some brief discussion may nevertheless be appropriate. The problem is simply this. A bona fide purchaser for value is required to examine the land records and is chargeable with such knowledge as might be revealed by such examination. *Chavez v. Gibbs*, 198 Va. 379, 382, 94 S.E.2d 195, 197 (1956). If on September 29, 2005—the date of the chapter 11 filing—the purchaser first examined the grantee index, he or she would find the deed that was recorded on August 13, 2004, by which Ms. Wilson acquired title from Mr. Toon. If the purchaser then examined the grantor index for conveyances by Ms. Wilson on or after that date, three such conveyances would appear: the Moir deed of trust, the First Mariner deed of trust, and the Toon deed of trust. There is no evidence before the court as to whether the grantor and grantee indexes in the clerk's office of the Circuit Court of Fairfax County would have shown the time of recordation in addition to the date. In any event, the deed book and page references would presumably reveal that the Moir deed of trust was placed on record prior to the deed. The question, therefore, is whether under Virginia law a purchaser could safely ignore the Moir deed of trust—even though a title

9

examination would have brought it to his attention—and claim the status of a bona fide purchaser for value.

A.

A strong argument can certainly be made that the plain language of § 55-105 empowers a purchaser to ignore any deed of trust that was recorded "before [the seller] acquired the legal title of record" without regard to whether the purchaser had actual or inquiry knowledge of its existence. The only reported Virginia case to have construed the statute, however, is far from clear as to whether the statute should be read quite that broadly. *Porter v. Wilson*, 244 Va. 366, 421 S.E.2d 440 (1992). In that case, an owner who had bought 53 acres but had never received a deed sold a 26-acre portion to a purchaser. The deed to the 26 acres was recorded. After the seller's death, his children sold the entire 53 acres to another purchaser. When the second purchaser began to cut timber on the first purchaser's 26 acres, the first purchaser sued for trespass. The second purchaser attempted to defend his claim to the entire 55 acres by relying on § 55-105 and arguing that he could not be affected by the prior deed for the 26 acres because it was recorded at a time when the original owner did not have record title. The Supreme Court of Virginia, however, held that because the original owner *never* had record title (even though he had good title by adverse possession), § 55-105 simply did not apply.

In the course of the opinion, the *Porter* decision briefly discusses the history of the statute. The Court explained that the revisors of the Virginia Codes of 1919 and 1849 intended the statutory precursor of § 55-105 "to reflect the principle" articulated by one of

the three judges of the then Court of Appeals of Virginia in *Doswell v. Buchanan's Ex'rs*, 30 Va. (3 Leigh) 365 (1831).  That principle, as stated in the revisors' notes, was as follows:

> [I]f after a person purchased land or acquired an EQUITABLE INTEREST in it, BUT BEFORE HE ACQUIRED THE LEGAL TITLE, conveyed it, . . . and AFTERWARDS acquired the legal title, and sold the land, the purchaser would not have to go back of the date when the LEGAL title was acquired and would be unaffected by the sale . . . made while he held only any equitable title . . . *if he had no knowledge of it.  The purchaser would get a good title if the chain was complete and disclosed no defects after the party acquired the legal title*.

Revisors' Note, Code § 5201 (1919) (capitalization in original) (emphasis added).

B.

Just how § 55-105 or the Revisors' Note actually "reflects the principle" set forth in *Doswell* is something of a puzzle.  The underlying facts in *Doswell* are somewhat complicated, but, at the risk of oversimplification, may be summarized as follows. Sometime prior to 1808, John Lyons sold a 1500-acre tract of land called "Bullfield" to John Hopkins but did not give Hopkins a deed.  Indeed, at the time of the sale, Lyons himself did not have a deed to the property.  In 1808 Hopkins, the purchaser, gave John Buchanan a deed of trust on 800 acres of Bullfield to secure repayment of a loan.  That deed of trust was recorded at the time the loan was made. Lyons did not get a deed to Bullfield until 1811, and he did not execute a deed to Hopkins until 1814.  In the interim Hopkins sold the land to James Doswell in 1811.  Buchanan then brought a chancery suit to subject the 800 acres to the payment of his debt, and Doswell defended on the basis that he was a good faith purchaser who had no actual notice of Buchanan's deed of trust.

The legal point of dispute on appeal was whether, under the recording statutes then in effect, a recorded deed of trust constituted constructive notice. In his dissenting opinion, Judge Cabell argued unsuccessfully that it did:

> "Every man of ordinary prudence," about to purchase from another searches the record, to see whether the property has been previously conveyed or incumbered. It is gross negligence not to do so. He who fails to do it, wilfully shuts his eyes against the truth, and ought not to be permitted to avail himself of his ignorance. So far from having equal equity, with a former bona fide incumbrancer, whose deed is duly recorded, he has no equity at all.

*Doswell*, 30 Va. (3 Leigh) at 385. Judge Cabell's disagreement with the majority, however, related solely to the issue of *constructive* notice, which he defined as "no more than evidence of notice, the presumptions of which are so violent, that the court will not even allow of its being controverted." *Id*. As to the effect of *actual* notice, he agreed with the majority: "It is admitted, on all hands, that *actual notice of a prior deed of trust or mortgage, will bind a subsequent purchaser*[.]" *Id.* at 384. And he further conceded that if the recorded deed of trust were not construed as providing constructive notice, the correct rule of law was that the purchaser "ought to be protected" with respect to a purchase, or any portion of it, made "before he received actual notice of the existence" of the earlier conveyance. *Id.* at 388. The lead opinion by Judge Carr, while holding that recordation did not constitute constructive notice, went on to argue that even if it did, it should not extend to Buchanan's deed of trust:

> But, even if it were admitted to have been the duty of Doswell to search the records, how far ought that search to be carried? *Assuredly, not beyond the period at which the legal title vested in the vendor.* Suppose him to take the advice of counsel: he would call for the chain of title; . . . and seeing that the title . . . was by deed [of December 1810] conveyed to Hopkins, he would look *from this date down* to the time of consultation, to see whether there were any incumbrances. This is all that could, with any shew of reason, be required

>    of him: but this would never lead him to the deed of trust of May 1808, made
>    by Hopkins to Buchanan[.]

*Id.* at 381 (emphasis added). It is evidently this passage that is the source of the "principle" reflected in § 55-105.

C.

In the absence of any other Virginia case citing or discussing § 55-105 or its predecessors, the court must do its best to predict how the Supreme Court of Virginia would rule if presented with facts similar to those before the court. *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.,* 174 F.3d 411, 418 (4th Cir. 1999) (holding that without guidance from the state court of last resort, federal courts must do their best to predict how that court would decide the matter). That a recorded deed of trust provides constructive notice of its existence is no longer open to question. In that context, Section 55-105 is most naturally seen as adopting Judge Carr's concern that constructive notice should arise only from those instruments that a reasonable title search would find: that is, instruments recorded from the "date down" of the deed into the seller.

What is not clear from the discussion in *Porter* is whether Section 55-105 was meant to address only the question of when *constructive* notice arises, or whether it was also meant to immunize a purchaser against encumbrances or adverse conveyances of which he had *actual* notice regardless of whether they were placed on record before the seller acquired legal title. Because the question of whether a third party had actual notice can be difficult to prove or disprove, it is possible that the General Assembly intended to foreclose *any* evidentiary inquiry into the subject, much as the statute of frauds forecloses evidentiary inquiry into certain types of alleged oral contracts. On the other hand, the Revisors' Note

plainly suggests that actual notice remains an issue, since it explains that "the purchaser would not have to go back of the date when the LEGAL title was acquired and would be unaffected by the sale . . . made while he held only any equitable title . . . *if he had no knowledge of it."* (emphasis added). And to the extent the statute, as *Porter* explains, was intended to reflect the "principle" of *Doswell v. Buchanan,* it is significant that *all* the judges in that case agreed that a purchaser would be bound by a recorded deed of trust of which he had actual knowledge. While the issue is obviously not free from doubt, the court believes the Supreme Court of Virginia would construe Section 55-105 as a limit only on the constructive notice provided by the recording of an encumbrance or conveyance and would not construe it as allowing a purchaser to ignore a recorded encumbrance or conveyance he or she had actual knowledge of, simply because it was recorded before the seller acquired record title to the property.

IV.

Of course, whatever personal knowledge Ms. Wilson had because of her involvement in the transaction is an issue only if *Hartman* remains good law and is controlling. But even if the Fourth Circuit were to abandon *Hartman* and join the overwhelming majority of courts holding that the debtor's own knowledge is not imputed to her in her capacity as debtor in possession, there would remain the question of constructive knowledge. Even under § 544, a bankruptcy trustee or debtor in possession is bound by whatever constructive notice would bind a bona fide purchaser for value. And that leads directly to the question of whether a bona fide purchaser is charged with constructive knowledge of an encumbrance or conveyance recorded *the same day* as the deed to his seller, but prior in time. Section 55-105

14

simply refers to instruments recorded "before" the seller acquired the legal title of record. One hour prior is certainly "before" in the literal sense of that term. On the other hand, both the revisors' note cited in *Porter* ("the purchaser would not have to go back of the *date* when the LEGAL title was acquired") and Judge Carr's example in *Doswell* (the purchaser "would look from this *date down*") refer to the cutoff point as being the "date" the deed was recorded. This may simply reflect the practicalities of title searches in 1831 and 1919. But even in 2006, it is difficult to see how an encumbrance or conveyance recorded the very same day as the deed by which the seller acquires title would not leap out and be plainly apparent to any purchaser examining the land records. Again, while the issue is not free from doubt, the court believes the Virginia Supreme Court would construe "before" in Section 55-105 as meaning before the *date* of recordation. For that reason, even if this court were not bound by *Hartman,* the court would be unable to conclude on the present record that a purchaser for value searching the land records on September 29, 2005, would not have had constructive notice of the Moir deed of trust.

Conclusion

Because under controlling Fourth Circuit precedent Ms. Wilson's personal knowledge of the Moir deed of trust would be imputed to her as debtor in possession, and because in any event a bona fide purchaser for value would be charged with constructive knowledge of a encumbrance recorded the very same day as the deed by which the seller acquired legal title, Ms. Wilson has not carried her burden of showing that there are no material facts in dispute and that she is entitled to judgment avoiding the Moir deed of trust. Accordingly, the motion for summary judgment on Count I will be denied.

A separate order will be entered consistent with this opinion.

Date: _____       _____
                                              Stephen S. Mitchell
Alexandria, Virginia                          United States Bankruptcy Judge


Copies to:

Richard G. Hall, Esquire
4208 Evergreen Lane, Suite 234
Annandale, VA  22003
Counsel for the plaintiff

Kenneth L Crosson, Esquire
Crosson & Sodowsky PLLC
12500 Fair Lakes Circle Suite 250
Fairfax, VA 22033-4904
Counsel for defendants David L. and Vanessa M. Moir

James R. Schroll, Esquire
Bean, Kinney & Korman, P.C.
2000 North 14th Street, Suite 100
Arlington, VA  22201
Counsel for defendants TS3 Grantor Trust and Charles Toone, Trustee

Geoffrey J. Greeves, Esquire
Greenberg Traurig
800 Connecticut Ave., NW
Suite 500
Washington, DC 20036
Counsel for defendants Brett A. Amendola and Roger Amendola

Jeffrey J. Fairfield, Esquire
459 Herndon Parkway, Suite 14
P. O. Box 546
Herndon, VA 20172-0546
Counsel for defendants Jeffrey J. Fairfield and Norman F. Hammer, Trustees